El Pueblo de Puerto Rico, demandante y apelado, *v.* Saturnino Rodríguez, acusado y apelante.

Núm. 10222.—*Sometido:* Enero 12, 1944. *Resuelto:* Enero 31, 1944.

*F. González, Jr.,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Presidente Interino Señor Travieso emitió la opinión del tribunal.

El apelante fué acusado y convicto de un delito de incesto, consistente en haber tenido concúbito carnal con Eneida Rodríguez, su hija legítima. No conforme con la pena de tres años de presidio que le fuera impuesta, interpuso el presente recurso, alegando en apoyo del mismo que la corte inferior erró (1) al permitir que la perjudicada fuera llamada por el fiscal a declarar en tres distintas ocasiones, o sea sin que ella produjera su declaración de una sola vez; (2) al admitir el testimonio de los dos peritos médicos referente a hechos acaecidos en 1942, no obstante haber ocurrido los hechos imputados al acusado en enero y febrero de 1940; y (3) al resolver que la declaración no corroborada de la perjudicada era suficiente para justificar la convicción del acusado. Consideraremos conjuntamente los dos primeros señalamientos.

1–2. Hemos hecho un cuidadoso estudio de la transcripción de la evidencia. De ella resulta en verdad que Eneida Rodríguez, la alegada perjudicada, fué llamada a ocupar la silla testifical en tres ocasiones distintas durante la celebración del juicio. Antes de hacer un resumen de su testimonio, en sus tres etapas, conviene hacer constar que la testigo es hija del acusado, nacida en diciembre 28 de 1927. Tenía por lo tanto trece años y uno o dos meses de edad en enero y febrero de 1940, fecha en que ocurrieron los hechos imputados al acusado y alrededor de quince años y medio en la fecha del juicio.

Después de un largo interrogatorio y vencida al fin la natural resistencia de una hija a declarar en contra de su padre, más de tres años después de haber sido ultrajada, la testigo declaró, en substancia:

Que asistió a la escuela hasta el séptimo grado; que vivía en el campo y en el pueblo con su familia; que en el año 1940 estuvo enferma en el Hospital Municipal de Caguas y fué asistida allí por los doctores Forastieri y Santiago, quienes

la examinaron; que nunca ha tenido novio; que en enero de 1940 ella era señorita y ahora no lo es porque la deshonraron; que fué su papá, Saturnino Rodríguez, quien la deshonró; que el hecho ocurrió en enero de 1940 en Cidra. Al llegar a este punto del interrogatorio, el fiscal suplicó a la corte que dejara a la testigo bajo las reglas de la corte para continuar más tarde el interrogatorio directo. Repreguntada por la defensa, la testigo dijo que con anterioridad al juicio declaró voluntariamente ante el juez Molina y le dijo lo mismo que ahora decía porque esa era la verdad. Al terminar el contrainterrogatorio, el juez preguntó al fiscal si pensaba utilizar de nuevo a la testigo, contestó el fiscal afirmativamente y la niña fué puesta bajo las reglas de la corte.

Fué llamada a declarar la señora Rosa Meléndez, enfermera supervisora del Hospital de Caguas. Ocurrieron varios incidentes durante el interrogatorio, y la corte, a moción de la defensa ordenó la eliminación de todo lo declarado por dicha testigo. Fué en ese momento que el fiscal llamó nuevamente a la joven perjudicada. Se opuso la defensa, invocando el artículo 519 del Código de Enjuiciamiento Civil (1933), Ley de Evidencia, artículo 157, la corte concedió el permiso solicitado por el fiscal, tomó excepción la defensa, y continuó Eneida Rodríguez declarando que lo que le hizo su papá se lo hizo estando en su casa; que ella estaba durmiendo, con ropa de cama; que las luces estaban apagadas; que lo que hizo fué "sin gusto porque yo estaba acostada"; que no gritó porque no podía, porque no se atrevía, y porque estaba dormida; que su papá, después de esa noche, ha hecho eso con ella tres veces, después que la deshonró; que no se lo dijo a su mamá; que su mamá no estaba en la casa; que no se lo contó a nadie; que tardó tanto tiempo, dos años, hasta que ingresó en el hospital, sin decir nada, porque su papá se lo impedía diciéndole que no lo dijera y amenazándola y que ella tenía miedo de que él la matara, porque se lo decía. Preguntada por uno de los jurados si era o no cierto que su

padre la había amenazado para que no hablara, la niña contestó afirmativamente. Terminada esta parte del interrogatorio, el fiscal pidió permiso para retirar "por ahora" a la testigo, para interrogarla de nuevo más tarde si lo creyere necesario.

El fiscal ofreció entonces el testimonio del Dr. Manuel Santiago con el único propósito de demostrar que la niña estaba desflorada. Se opuso la defensa alegando que habiendo ocurrido el hecho en 1940 y practicádose el examen médico en 1942, la declaración del médico sobre hechos tan remotos no era admisible. La corte resolvió admitir la declaración para comprobar el hecho de la desfloración. Declaró el testigo que examinó los órganos sexuales de la niña y comprobó que estaba desflorada, sin que pudiera precisar cuándo había ocurrido la desfloración. Declarada sin lugar la eliminación del testimonio del médico, tomó excepción la defensa.

Pidió permiso el fiscal por segunda vez "para hacerle unas preguntas nuevas a la perjudicada". Se opuso la defensa. La corte concedió el permiso solicitado por tratarse de una niña de 14 a 16 años de edad, que ha sido remisa en su forma de declarar, y porque habiendo la relación de hija y padre entre ella y el acusado, debe dársele una oportunidad para que declare. Tomó excepción la defensa, y la niña ocupó nuevamente la silla testifical.

Esta tercera parte de la declaración de la niña ocupa quince páginas de la transcripción de evidencia. Si eliminamos los innumerables e innecesarios incidentes entre el fiscal y la defensa, encontramos que lo único que queda de la declaración de Eneida Rodríguez es: que no recuerda cómo fué que el acusado la deshonró. Con el propósito de que pudiera refrescar su memoria, se le presentó la declaración prestada por ella ante el juez de paz, y contestó que lo que había declarado ya en el juicio era lo mismo que le había declarado al juez de paz. Después de haber ella leído su declaración anterior, insistió el fiscal en que la niña diese detalles sobre lo que le

había hecho su padre y lo que ella había sentido. A esas insistentes preguntas, la niña contestaba con evasivas. Nos parece perfectamente natural que la niña se resistiese a describir con todos sus detalles el acto criminal de que fuera víctima, especialmente si tenemos en cuenta que el acusado es su padre y que estaba declarando en su presencia. Dijo también que no recordaba la fecha en que el acusado había realizado el acto carnal por última vez. A preguntas de uno de los jurados contestó que ella ha relizado actos carnales nada más que con su papá.

Declaró el Dr. Forastieri corroborando todo lo dicho por el Dr. Santiago, y añadió que la niña fué llevada al hospital por la madre; que se encontraba en un estado de nerviosidad, con ataques extremados; que se quejaba de que estaba enferma, pero se comprobó que no lo estaba y que sólo se trataba de una "afectación nerviosa"; que la desfloración en una niña de 14 ó 15 años, influye en su sistema nervioso, alterándoselo y afectándoselo.

Como se ve, la única prueba directa ofrecida por el fiscal fué la declaración de la niña; y la única prueba de corroboración fué el testimonio de los dos médicos, en cuanto al hecho de que la niña había sido desflorada.

El artículo 519 del Código de Enjuiciamiento Civil, invocado por el apelante como base del primer señalamiento, lee así:

"Artículo 519 (157 L.) (2050 Cal.) Una vez examinado un testigo, no podrá volvérsele a examinar sobre el mismo asunto, sin el consentimiento del tribunal; pero podrá volver a ser examinado respecto a cualquiera nueva materia sobre la cual hubiere sido examinado por la parte contraria. Y terminados los interrogatorios de ambas partes, no podrá volvérsele a llamar sin permiso del tribunal. Se concederá o denegará el permiso, según lo aconsejare un recto criterio."

La razón de la regla que prohibe el que se vuelva a llamar a un testigo, después de haber sido éste interrogado por ambas partes es, además del orden y rapidez en los procedi-

mientos, el peligro de que el testigo que ya ha declarado se entere del testimonio de los otros testigos y al ser llamado de nuevo trate de rectificar su declaración o de hacerla más fuerte y más enfática en contra de la parte a quien su declaración perjudica. La ley, sin embargo, reconociendo que pueden presentarse casos en que los fines de la justicia serían afectados si no se permitiera llamar de nuevo a un testigo que ya ha declarado, dejó al recto criterio y discreción de la corte la concesión o denegación del permiso.

En el caso de autos la corte, a nuestro juicio, actuó con rectitud; y consideradas todas las circunstancias del caso hizo buen uso de la discreción que la ley le concede. *Pueblo* v. *Gómez*, 45 D.P.R. 812; y *Pueblo* v. *Lorenzano*, 52 D.P.R. 888. Es cierto que a la niña perjudicada se le permitió declarar por segunda y por tercera vez, pero en realidad sus tres declaraciones pueden ser consideradas como una sola, pues el testimonio de la señora Meléndez fué eliminado en su totalidad y el de los médicos versó sobre un solo punto, la desfloración de la niña. Esta estuvo durante todo el juicio bajo las reglas de la corte. Y, además, su última declaración fué prácticamente una repetición de lo que ya había declarado antes. El acusado tuvo la oportunidad de oír todo lo declarado por ella e hizo uso de su derecho a repreguntarla. No creemos que los derechos del acusado fueran perjudicados en manera alguna porque se permitiese a la niña declarar en la forma que hemos relatado.

Tampoco hubo error en la admisión del testimonio de los dos médicos que examinaron a la niña en 1942, dos años después de haber ocurrido la alegada desfloración. El tiempo transcurrido entre el hecho imputado al acusado y el examen médico, es inmaterial, habida cuenta de que el único hecho que se trató de probar era que la niña había perdido su virginidad. Nada hubo en el testimonio de los médicos que tendiera a conectar al acusado con la comisión del delito imputádole. Véanse: *State* v. *Sullivan*, 159 La. 589, 105

So. 631; *State* v. *Columbus,* 154 Atl. 605; Underhill *Criminal Evidence,* Sección 351, pág. 1242.

3. ¿Erró la corte sentenciadora al instruir al jurado que en un caso de incesto la declaración no corroborada de la mujer ofendida es bastante en derecho para sostener un veredicto de culpabilidad?

El artículo 250 del Código de Enjuiciamiento Criminal especifica los casos en que un acusado no podrá ser declarado convicto por la declaración de la mujer agraviada, a menos que su declaración se corrobore con otras pruebas. Los delitos enumerados son la promoción de un aborto; la seducción por medio de engaño o halago de una mujer soltera menor de 25 años y reputada por casta, con objeto de prostituirla; la seducción bajo promesa de matrimonio; y la violación.

Como se ve, dicho artículo no incluye el delito de incesto entre aquellos en que se requiere corroboración del testimonio de la agraviada. Por no estar tampoco incluído en el citado artículo, este tribunal resolvió en *Pueblo* v. *Párquez,* 34 D.P.R. 566, que no es necesaria la corroboración cuando el delito imputado es el de ataque para cometer violación.

La corte inferior basó su resolución de que no era necesaria la corroboración del testimonio de la hija del acusado, en el caso de *People* v. *Stratton,* 141 Cal. 604, 606. Arguye el apelante que la decisión en dicho caso fué repudiada por esta Corte Suprema en la opinión emitida en el caso de *El Pueblo* v. *Alvarez,* 47 D.P.R. 168. Esto nos obliga a hacer un estudio de ambas decisiones.

En el citado caso de California, Stratton fué acusado de haber realizado actos carnales con su hija, una niña menor de catorce años de edad y por tanto incapaz para consentir el acto realizado en su persona. La niña declaró que su padre la había obligado en varias ocasiones a realizar actos carnales. La corte dió al jurado la siguiente instrucción:

"La Corte os instruye que el consentimiento de ambas partes no es esencial en el delito de incesto. Si el acusado realiza el acto

sexual con una mujer emparentada con él dentro del grado de consanguinidad en que el matrimonio está prohibido, él es culpable del delito de incesto, lo mismo si el acto se realizó con el consentimiento de la mujer o sin él.''

Después de transcribir el texto del artículo 285 del Código Penal de California, que es idéntico al del artículo 275 de nuestro Código, continúa la corte, diciendo:

''Basándose en este artículo se arguye que el delito de incesto no puede ser cometido sin el mutuo consentimiento de las partes, y que cuando, como en este caso, se demuestra que el acto ha sido realizado bajo circunstancias que constituyen una violación de la mujer, el delito no es incesto, y sí violación. .   .   .   .   .   .   .

''Pero este razonamiento no se recomienda a sí mismo. Interpreta la ley en el sentido de requerir la mutualidad del convenio y el consentimiento de ambas partes como elementos esenciales del delito. Esto se ha hecho por interpretación judicial, y no por declaración expresa de la ley. El elemento esencial del delito de incesto, como en la violación, es el contacto carnal ilegal. En la violación es ilegal porque se realiza por medios ilegales. Es ilegal en el incesto, no importa cuáles hayan sido los medios, por razón de la consanguinidad o afinidad. Cuando concurren ambas circunstancias, la fuerza y la consanguinidad, siendo el objeto del estatuto prohibir y castigar esa clase de contacto sexual, no es menos incesto porque se añada el elemento de violación, y no es menos violación porque se cometa en la persona de una parienta. En ésta, como en todas las demás ofensas, la culpabilidad del acusado se mide por su acto e intención, y no por el acto o intención de persona otra alguna. Qu'' ésa ha sido la opinión de esta Corte lo demuestra el caso de *People v. Kaiser*, 119 Cal. 456, en el que el acusado fué procesado por el delito de incesto que se le imputaba haber cometido en la persona de su hija, una niña de menos de trece años de edad. Como el contacto carnal con una niña legalmente incapacitada para prestar su consentimiento constituye una violación, se arguyó en contra de la acusación que el delito en ella imputado era el de violación. Empero, esta Corte dijo:

'' 'Asumiendo que los hechos alegados en la acusación en este caso fueran suficientes para constituir el delito de violación, estando entonces la hija por debajo de la edad del consentimiento, todavía, bajo

la sección 285 del Código Penal, esos hechos constituyen claramente el delito de incesto, y el acusado fué por tanto debidamente enjuiciado por esa ofensa. (Citas.)'

''Si la agraviada, estando legalmente capacitada para consentir, consiente el acto carnal incestuoso, indiscutiblemente ella es *particeps criminis*, y su testimonio, como el de cualquier otro cómplice, si no está corroborado, es insuficiente para sostener una convicción. Pero si, por el contrario, ella ha sido víctima de la fuerza, o del fraude, o de la indebida influencia, o es demasiado joven para poder consentir legalmente, de manera que ella no concurre al acto incestuoso voluntariamente, en ese caso ella no puede ser considerada como un cómplice.''

El caso de *El Pueblo* v. *Alvarez*, supra, no puede ser citado como autoridad para sostener que la declaración de la mujer agraviada, en un caso de incesto, si no está corroborada es insuficiente para condenar al acusado. Esa cuestión no estuvo envuelta ni fué decidida en dicho caso. Alvarez fué acusado de haber cometido el delito de incesto en cada una de sus dos hijas, y la cuestión principal era la de si las declaraciones hechas por las dos jóvenes a dos de sus tías bastante tiempo después de cometido el incesto eran admisibles, como parte del *res gestae,* para corroborar el testimonio de las agraviadas. Y se resolvió que eran admisibles.

No siendo el delito de incesto uno de los comprendidos en las disposiciones del artículo 250 del Código Penal; y no pudiendo ser considerada la niña agraviada en este caso como una cómplice del acusado, resolvemos que no erró la corte sentenciadora al instruir al jurado en la forma en que lo hizo. Véase: 31 C. J. sec. 47, páginas 387, 388.

*La sentencia recurrida debe ser confirmada.*

El Juez Asociado Sr. Snyder no intervino.